IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

BLACK DIAMOND ENERGY OF
DELAWARE, INC,

       Debtor.

_____

BLACK DIAMOND ENERGY OF
DELAWARE, INC,

       Appellant,

   v.

WYOMING OIL AND GAS
CONSERVATION COMMISSION

       Appellee.

Bankruptcy No. 22-21448-GLT

Chapter 11


2:25-CV-00145-CCW

## OPINION

Before the Court is an appeal by Black Diamond Energy of Delaware, Inc. ("Black Diamond") from an Order by the U.S. Bankruptcy Court for the Western District of Pennsylvania, denying Black Diamond's amended motion to enforce an automatic stay and request for sanctions, as well as Black Diamond's subsequent motion for reconsideration. *See In re Black Diamond Energy of Delaware, Inc.*, No. 22-21448-GLT, 2024 WL 4907104 (Bankr. W.D. Pa. Nov. 27, 2024). For the reasons set forth below, the Court will affirm the bankruptcy court's denial of Black Diamond's motions.

## I.      Background

Black Diamond's claims revolve around a series of actions taken by the Wyoming Oil and Gas Conservation Commission ("the Commission") after Black Diamond filed its petition pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*, in bankruptcy court on

July 26, 2022.  ECF No. 22 at 49–55.  Black Diamond is a corporation which owns and operates thirteen federal oil wells in Sublette County, Wyoming.  *Id.* at 84 ¶¶ 5–6.  The Commission is tasked with carrying out Wyoming's Oil and Gas Conservation Act, Wyo. Stat. Ann. § 30-5-104 *et seq.*, ("the Conservation Act"), through its regulation of oil and gas in the State of Wyoming. Black Diamond and the Commission have had extensive and extended disputes for a period of over ten years.  ECF No. 22 at 174:17–189:20.  Leading up to 2021, the Commission initiated numerous proceedings that resulted in an array of penalties for Black Diamond, including the Commission's revocation of Black Diamond's right to operate non-federal wells in Wyoming, the Commission's order directing that some of Black Diamond's Wells be plugged and abandoned, and the Commission's order requiring Black Diamond to forfeit multiple surety bonds it had posted.  *In re Black Diamond*, 2024 WL 4907104, at *1–2.

In 2021, the Commission held a hearing regarding Black Diamond's violation of various Commission rules including improper reporting and failure to pay taxes.  *Id.* at *3.  After the hearing, the Commission entered Order 205-2021, requiring Black Diamond to, *inter alia*: 1) pay a $5,000 fine for its rule violations;  and 2) "post a surety bond or other guaranty in the amount of $25,000, as security for its future compliance with the Commission's Rules and orders[.]"  ECF No. 22 at 66–72.  Black Diamond appealed the order to the District Court of the State of Wyoming, County of Natrona, 7th Judicial District, and the order was affirmed in January of 2022.  *Id.* at 414–15.  In July of 2022, the Commission issued Order 459-2022, authorizing staff to seal Black Diamond's wells for its failure to comply with Order 205-2021.  *Id.* at 73–78.  On July 26, 2022, the date on which Black Diamond filed its petition in bankruptcy court, the Commission sealed Black Diamond's wells.  *Id.* at 454.  In response, Black Diamond removed several of the seals and restarted production from some of its wells, in defiance of Order 205-2021.  *Id.* at 130 ¶¶ 12–13.

The Commission informed Black Diamond that it would be re-sealing the wells, and explained that the Commission would remove the seals if Black Diamond "achieves compliance" with Orders 449-2022 and 205-2021. *Id.* at 64–65. When conducting inspections on the resealed wells, the Commission observed an unreported oil spill, and later learned of another unreported spill that occurred in May of 2023. *Id.* at 121 ¶¶ 15, 122 ¶ 18 (Declaration of Joe Scott, Commission Natural Resources Program Supervisor).

On June 27, 2023, Black Diamond filed an amended motion to enforce the automatic stay and request for sanctions in bankruptcy court. *Id.* at 82–90. Black Diamond's motion alleged that the Commission violated the automatic stay by 1) sealing Black Diamond's wells; 2) sending the June 9, 2023 letter requiring compliance with Orders 449-2022 and 205-2021. *Id.* The bankruptcy court denied the original motion and a subsequent motion for reconsideration. *Id.* at 267–269, 326:20–21.

On appeal, Black Diamond asks this Court to reverse the bankruptcy court's original Order and to remand this matter to bankruptcy court to determine damages that Black Diamond incurred from the Commission's alleged violation of the automatic stay.[1] ECF No. 21 at 38. The matter is now fully briefed and ripe for resolution. *See* ECF Nos. 21–22, 25–26, 32–33.

## II.    Standard of Review

District courts review "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error[,] and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (internal quotation marks omitted). A factual finding by a bankruptcy court is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Sys.,*

---

[1] The Court has jurisdiction over Black Diamond's appeal of the bankruptcy court's orders pursuant to 28 U.S.C. § 158(a)(1).

*Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  When reviewing a mixed question of fact and law, district courts "must break down the determination and apply the appropriate standard of review to each." *Shovlin v. Klaas*, 539 B.R. 465, 467 (W.D. Pa. Aug. 28, 2015) (Schwab, J.) (citing *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003)).  Reviewing courts "apply a clearly erroneous standard to 'integral facts,' but exercise plenary review of the court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 136–37 (3d Cir. 2011) (quoting *In re Exide Techs.*, 607 F.3d 957, 961–62 (3d Cir. 2010)).

## III.    Legal Analysis

In its appeal to this Court, Black Diamond contends that the bankruptcy court erred in holding that the Commission's post-bankruptcy-petition actions—including 1) resealing Black Diamond's wells;  2) ordering Black Diamond to pay a $5,000 fine for its rule violations;  and 3) directing Black Diamond to post a $25,000 bond "as security for its future compliance with the Commission's Rules and orders"—did not violate the automatic stay provision of 11 U.S.C. § 362(a).  ECF No. 21.  The Commission argues that its actions fall within the police and regulatory power exception to the automatic stay provision of 11 U.S.C. § 362(a) because they satisfy the pecuniary purpose and public policy tests set forth by the Third Circuit.  *See* ECF No. 25;  *In re Nortel Networks, Inc.*, 669 F.3d at 139–40.  For the below reasons, the Court finds that the bankruptcy court correctly denied Black Diamond's motion to enforce the automatic stay and request for sanctions as well as its subsequent motion for reconsideration.  *In re Black Diamond*, 2024 WL 4907104;  ECF No. 22 at 45.

### A.    Applicable Framework

The United States Bankruptcy Code provides for the stay of a wide variety of actions or proceedings against a debtor upon the commencement of a bankruptcy case.   11 U.S.C. § 362(a)(1)–(8).   For instance, § 362(a) bars "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" in connection with a prepetition claim;  "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;"  and "any act to collect, assess, or recover a [prepetition] claim against the debtor[.]"   11 U.S.C. § 362(a)(1), (3), (6).   The automatic stay applies to "all entities[,]" 11 U.S.C. § 362(a), "and the bankruptcy code expressly defines 'entities' to include 'governmental unit[s.]'"  *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 86 (3d Cir. 1989).   However, government actions taken "to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment . . . are exempted from the automatic stay."   11 U.S.C. § 362(b)(4).

To determine whether a government action falls within this "police and regulatory power" exception to the automatic stay, the Third Circuit applies two "'related, and somewhat overlapping' tests:  the pecuniary purpose test and the public policy test."  *In re Nortel Networks, Inc.*, 669 F.3d at 139.   These tests are designed to distinguish and bar government actions in which the government brings suit "in furtherance of *either* its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors."  *Id.* at 139–140 (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 274, 389 (6th Cir. 2001).   The pecuniary purpose test "asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health."  *Id.*  Similarly, the public policy

test "asks whether the government is effectuating public policy rather than adjudicating private rights." *Id.*   As such, "if the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies[,]" but if "the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.*   At the same time, the statute carves out an "exception to the exception[,]" in that "enforcement of a money judgment" is expressly excluded from the police power exception. *In re Mystic Tank Lines Corp*, 544 F.3d 524, 527 (3d Cir. 2008).   Thus, a government unit may continue to pursue and enforce regulatory obligations, but may not use § 362(b)(4) as a vehicle to execute on estate property to satisfy a prepetition monetary judgment.

Here, Black Diamond contends that the Commission violated the automatic stay by resealing its wells and declining to restore the wells to operation until Black Diamond complied with Order 205-2021, which required Black Diamond to 1) pay a $5,000 fine for previous violations;  and 2) post a $25,000 bond. ECF No. 22 at 66–72.  While the parties do not dispute that the Commission constitutes a "governmental unit[,]" Black Diamond argues that the Commission's actions do not fall within the police and regulatory power exception because they fail both the pecuniary purpose test and the public policy test. ECF No. 21 at 20–38.  The Court will address each argument in turn.

**B.     The Commission Did Not Violate the Automatic Stay by Attempting to Enforce Order 205-2021, which Required Black Diamond to Post a $25,000 Bond and to Pay a $5,000 Fine**

The bankruptcy court rejected Black Diamond's argument that the Commission violated the automatic stay by attempting to enforce prepetition Order 205-2021 after the date of Black Diamond's chapter 11 filing. ECF No. 22 at 66–72.  Order 205-2021 required Black Diamond to pay a $5,000 civil penalty for past violations and to post a $25,000 surety bond "as security for

future compliance" with the Commission's rules and orders. *Id.* The bankruptcy court held that the Commission's post-petition conduct in enforcing that order fell within the police and regulatory power exception provided in 11 U.S.C. § 362(b)(4). *In re Black Diamond*, 2024 WL 4907104, at *13. Reviewing that legal conclusion *de novo* and the underlying factual findings for clear error, this Court agrees.

### 1. The $25,000 bond satisfies the pecuniary purpose and public policy tests

Beginning with the future compliance bond, the record supports the bankruptcy court's factual finding that the $25,000 bond required by Order 205-2021 is a forward-looking mechanism which "facially advances the Commission's non-pecuniary interest in the enforcement of its rules and orders." *In re Black Diamond*, 2024 WL 4907104, at *11. Consistent with the bankruptcy court's Order, the record as a whole suggests that the Commission's post-petition conduct in requiring that the bond be posted and sealing Black Diamond's wells until that occurred was directed at compelling adherence to ongoing conservation and operational requirements. *See* ECF No. 22 at 67–69 (Commission Order describing a years-long history of rule violations by Black Diamond); *id.* at 121 ¶¶ 15, 122 ¶ 18 (Declaration of Commission Natural Resources Program Supervisor describing multiple instances of oil spills occurring at Black Diamond facilities which were not reported); *id.* at 130 ¶¶ 12–13 (Declaration of Commission Deputy Supervisor explaining how seals placed by the Commission were removed and Black Diamond wells were returned to operation despite orders by the Commission); *id.* at 180:5–14, 181:4–20 (testimony by Black Diamond's principal director asserting that Black Diamond need not comply with the Commission and its rules). Thus, the bankruptcy court's factual findings regarding the interests of the Commission were not clearly erroneous.[2]

---

[2] Notably, beyond asserting that the issues presented in its brief "present questions of law that are subject to this Court's *de novo* review[,]" Black Diamond failed to sufficiently distinguish questions of law and questions of fact

Whether the Commission's conduct falls within an exception to the automatic stay in light of these factual determinations is a question of law subject to *de novo* review.  Under the Third Circuit's tests, the Commission's enforcement method falls squarely within the § 362(b)(4) police power exception to the automatic stay.  Beginning with the pecuniary purpose test, Black Diamond contends that the $25,000 bond fails the test because 1) the bond is a penalty imposed based on prepetition conduct, as opposed to a security for its future compliance;  and 2) the bond does not "abate an existing problem[,]" as the Commission "offered no evidence that it or anyone else . . . had incurred any expense in addressing" two unreported oil spills at Black Diamond's wells.  ECF No. 21 at 32–33.  The Court is not persuaded by either argument.

At the outset, the Commission's prepetition Order 205-2021 recited numerous past violations by Black Diamond including multiple instances of failure to conduct required mechanical integrity testing, failure to provide idle well bonding, and Black Diamond's outright refusal to pay taxes to Wyoming.  ECF No. 22 at 67–69.  Following Black Diamond's chapter 11 filing, its rule violations continued, including removing seals placed by the Commission, returning its wells to production, and failing to report two oil spills as required by Commission Rules and Regulations.  *See* WOGCC Rules, Ch. 4, § 3(c)(ii) (requiring report of oil spills equal to or greater than one barrel);  ECF No. 22 at 121 ¶¶ 15, 122 ¶¶ 18, 130 ¶¶ 12–13.  Upon *de novo* review, the Court concludes that the bankruptcy court did not err in its finding that the Commission's pursuit

---

before the Court.  *See* ECF Nos. 21, 25.  The Commission contends that "[t]he motives and intentions of the Commission are factual findings subject to clear error review."  ECF No. 32.  This Court reviewed the bankruptcy court's conclusions regarding the Commission's intent for clear error.  *See In re Atlantic Business and Community Corp*, 901 F.2d 325, 329 (3d Cir. 1990) (reviewing for clear error a bankruptcy court's "finding of fact" as to whether a party willfully violated the automatic stay);  *see also In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990) ("The findings of fact by the bankruptcy court on the underlying or historical facts, such as the intent of the parties . . . are subject to review for clear error");  *see also Commissioner of Internal Revenue v. BrokerTec Holdings, Inc.*, 967 F.3d 317, 321 (3d Cir. 2020) ("The Tax Court's conclusions as to motive and intent are generally factual findings, subject to clear-error review.").  In any event, even if this Court had applied *de novo* review to the bankruptcy court's conclusions regarding the Commission's intent, the outcome would be unchanged.

of the $25,000 bond does not constitute liquidated damages for a past loss.  Instead, in light of this documented history of rule violations, this Court agrees with the bankruptcy court's conclusion that it amounts to financial assurance that Black Diamond will operate in conformity with the Commission's rules, rather than a simple penalty for prepetition conduct alone.  *In re Black Diamond*, 2024 WL 4907104, at \*11.

Black Diamond's arguments to the contrary are not persuasive.  Black Diamond contends that its unreported oil spills yielded no financial consequences for the Commission or any other third party, and thus the Commission's actions do not satisfy the pecuniary purpose test.  But this argument shows why the Commission's actions do, in fact, satisfy the pecuniary purpose test, which asks whether the government primarily seeks to "protect[] the public safety and health" as opposed to "protect a pecuniary government interest in the debtor's property."  *In re Nortel Networks, Inc.*, 669 F.3d at 139–40.  Even if the unreported oil spills had no financial consequences for the Commission, the potential public health and environmental dangers associated with oil spills implicate undeniably non-pecuniary purposes of the Commission.  *See Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.*, 733 F.2d 267 (3d Cir. 1984) (holding that "[n]o more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined" than the government "seek[ing] to force [the debtor] to rectify harmful environmental hazards.").  Thus, the Court finds no clear error in the bankruptcy court's factual conclusion that "[t]he fundamental purpose of the compliance bond is to ensure the Debtor follows all the Commission's rules and orders going forward[.]"  *In re Black Diamond*, 2024 WL 4907104, at \*13.  Accordingly, upon *de novo* review, the Court agrees that the future compliance bond implicates a primarily non-pecuniary purpose.  *In re Nortel Networks, Inc.*, 669 F.3d at 139–40.

9

The public policy test is likewise met.  Black Diamond relies on two arguments in support of its proposition that the Commission's pursuit of the $25,000 bond fails the public policy test. First, Black Diamond contends that "the Commission does not point to any existing threat to the public welfare or safety[.]"  ECF No. 21 at 36.  As discussed above, the Commission's original Order 205-2021—which directed Black Diamond to post the compliance bond—identified a litany of potentially dangerous rule violations by the Commission.  ECF No. 22 at 67–69.  Post-petition, Black Diamond has continued to engage in Commission rule violations such as removing seals and returning its wells to operation and failing to report two separate oil spills.  *Id.* at 121 ¶¶ 15, 122 ¶¶ 18, 130 ¶¶ 12–13.  Under the *de novo* standard, this Court affirms the bankruptcy court's conclusion that "[t]here is no question [the Commission's] rules effectuate important public policy interests by ensuring oil and gas operators produce these resources safely and equitably, and without waste or environmental damage."  *In re Black Diamond*, 2024 WL 4907104, at *23.  As such, Black Diamond's continued flouting of the Commission's directives sufficiently demonstrates an ongoing threat, such that the Commission's actions designed to quell these continuing violations constitute "effectuat[ing] public policy" and "promot[ing] public safety and welfare[.]"  *In re Nortel Networks, Inc.*, 669 F.3d at 140.

Second, Black Diamond contends that "the Commission is not the type of organization, with the types of purposes, that falls within the Police Power Exception."  ECF No. 21 at 37. Looking to the Conservation Act, the Commission's authorizing statute, Black Diamond construes the Commission's jurisdiction narrowly, arguing that its purpose is to prevent economic "waste[,]" and, as a result, the Commission's actions are excluded from ever falling within the police and regulatory power exception to the automatic stay.  *Id.* at 37–38 (citing Wyo. Stat. Ann. § 30-5-102).  Interpretation of the Commission's enabling statute is a question of law which the Court

will review *de novo*.  The Court is not persuaded by Black Diamond's argument.  Black Diamond

asserts that courts apply the police and regulatory power exception to a given government action

only where that action is designed "to 'prevent or stop violation of fraud, environmental

protection,' and similar concerns to which Congress looked in establishing the exception."  *Id.* at

37 (citing *Nortel*, 669 F.3d at 140).  However, Black Diamond is unable to point to caselaw

defining the exception so narrowly.  While *Nortel* authorizes a "broad reading of the exception"

in cases involving "public health or safety," it does not strictly limit the application of the exception

generally to such cases.  669 F.3d 128 at 140–41.

Even if the exception's application was limited to actions implicating public health, safety,

and environmental protection, Black Diamond's interpretation of the Conservation Act would still

be too narrow.  Black Diamond contends that "the Commission's purpose is to prevent 'waste,'

*i.e.*, to develop Wyoming's oil and natural gas resources and to make sure that every barrel of

petroleum and cubic foot of natural gas is put to commercial use."  ECF No. 21 at 37.  Black

Diamond then characterizes the Commission's definition of "waste" as "look[ing] strictly to

economic terms rather than to any concerns about health, safety, or welfare."  *Id*.  Wyo. Stat. Ann.

§ 30-5-104, together with related provisions, authorizes the Commission to operate in its regulatory

capacity.  The statute itself provides that the Commission has "jurisdiction and authority over all

persons and property, public and private, necessary to effectuate the purposes and intent of [the

Conservation Act]."  Wyo. Stat. Ann. § 30-5-104.  Even if the Court were to accept, *arguendo*,

Black Diamond's interpretation of the term "waste[,]" various other provisions of the

Commission's authorizing statute directly implicate public health and the environment.  *See* Wyo.

Stat. Ann. § 30-5-104 (d)(ii)(E) ("The commission has authority . . . [t]o regulate, for conservation

purposes . . . [t]he contamination or waste of underground water");  Wyo. Stat. Ann.  § 30-5-104

11

(d)(i)(C) ("The commission has authority . . . [t]o require . . . [t]he drilling, casing, and plugging

of wells in such manner as to prevent the escape of oil or gas . . . the intrusion of water into an oil

and gas stratum, the pollution of fresh water supplies by oil, gas, or salt water, and to prevent

blowouts, cavings, seepages, and fires[.]").  Furthermore, the Commission's rules and regulations

expressly identify purposes rooted in public health and environmental protection:  "These rules are

intended to protect human health and the environment . . . to avoid contamination of the soils,

groundwater, and surface water at a drilling or producing location."  WOGCC Rules, Ch. 2, § 1.

Given these express provisions focused on public health and the environment, the Court disagrees

with Black Diamond's contention that "the Commission is not the type of organization, with the

types of purposes, that falls within the Police Power Exception."  ECF No. 21 at 37;  *see In re*

*Iezzi*, 504 B.R. 777, 785–86 (E.D. Pa. 2014) (finding that government actions fall within the §

362(b)(4) exception when "triggered by the debtor's failure to comply with a regulatory obligation

affecting public health, safety or welfare.").

Reviewing the bankruptcy court's conclusions regarding the primary motivation

underlying the Commission's actions, the Court finds no clear error in its conclusion that the

Commission was motivated by considerations beyond Black Diamond's "reporting and payment

of tax obligations[.]"  *In re Black Diamond*, 2024 WL 4907104, at *11.  That conclusion is

reinforced by the bankruptcy court's factual findings that, among other violations, Black Diamond

"defied the Commission and its rules by removing seals, returning its wells to production, and

failing to report two separate oil spills."  *Id.*

Accordingly, the Commission's post-petition efforts to compel Black Diamond to post the

$25,000 bond, and its related decision to keep the wells sealed until that compliance assurance was

provided, were valid exercises of police and regulatory power and are not stayed by § 362(a).

### 2. The Inclusion of the $5,000 Fine in the Original 205-2021 Order Does Not Preclude the Commission's Post-petition Enforcement of that Order from Falling within the Police Power Exception

Order 205-2021 also imposed a $5,000 civil penalty for Black Diamond's prepetition violations including improper reporting and failure to pay taxes. ECF No. 22 at 71. Efforts to enforce a prepetition monetary judgment constitute an "exception to the exception" and are expressly excluded from the police power exception to the automatic stay. *In re Mystic Tank Lines Corp*, 544 F.3d at 527. The Commission does not argue that post-petition pursuit of enforcement of the $5,000 fine would, on its own, constitute a permissible exception to the automatic stay. ECF Nos. 25, 32. Rather, the Commission contends that the primary purpose of Order 205-2021— taken as a whole—and subsequent efforts to enforce it, was non-pecuniary, and therefore within the police power exception. ECF No. 32 at 3. Black Diamond argues that because the Commission required it to "achieve[] compliance" with Order 205-2021 before removing seals on Black Diamond's wells post-petition, ECF No. 22 at 64–65, its enforcement efforts must be treated as prohibited debt collection. ECF No. 21 at 23–29. The Court agrees with the Commission.

The bankruptcy court correctly distinguished between analyzing 1) collection of the $5,000 fine as a money judgment and 2) enforcement of the regulatory order as a whole, including its non-monetary, future-looking compliance components. *In re Black Diamond*, 2024 WL 4907104, at *19–24; *see In re THG Holdings LLC*, 604 B.R. 154, 161 (Bankr. D. Del. 2019) (requiring courts to "get to the heart of the reasoning behind the government's actions" in analyzing whether a government action falls within the police and regulatory power exception); *see also In re Nortel Networks, Inc.*, 669 F.3d at 40 ("Instead of making a broad generally applicable pronouncement as to how the police power exception should be interpreted, we must look to the purpose of the proceeding at issue."). The pecuniary purpose test "asks whether the government primarily seeks

13

to protect a pecuniary governmental interest in the debtor's property," and the public policy test "asks whether the government is effectuating public policy rather than adjudicating private rights[.]" *Id.* at 139–40. Nothing in the record suggests that, post-petition, the Commission took discrete steps with a primary purpose to collect the $5,000 penalty. Subsequent communications by the Commission directing compliance with Order 205-2021 are insufficient to conclude that the Commission's primary purpose was pecuniary. To the extent that the Commission's post-petition communications referenced the $5,000 fine, those references appear to the Court to have been made in the context of requiring overall compliance with Order 205-2021 and the Commission's regulatory scheme. *See* ECF No. 22 at 64–65, 73–78. In a sworn declaration, Commission Deputy Supervisor Patrick Amole stated that if Black Diamond posted the $25,000 bond, its wells would be permitted to return to production. *Id.* at 130 ¶ 15. Black Diamond had the opportunity to challenge this assertion during cross-examination of Mr. Amole, but did not. *Id.* at 195:2–203:13. Viewing the Commission's Order 205-2021 enforcement efforts as a whole, along with the history of dealings between Black Diamond and the Commission, the bankruptcy court reasonably found that the Commission's primary purpose was to "ensure the Debtor follows *all* the Commission's rules and orders going forward[,]" not to collect on a prepetition money judgment. *In re Black Diamond*, 2024 WL 4907104, at *23 (emphasis in original). That factual assessment is not clearly erroneous, and, applying the Third Circuit's pecuniary purpose and public policy tests *de novo*, the Commission's actions remain within the policy and regulatory power exception to the automatic stay. 11 U.S.C. § 362(b)(4); *see In re Atlantic*, 901 F.2d at 329; *see also In re Gianakas*, 917 F.2d at 762 (3d Cir. 1990); *see also BrokerTec Holdings, Inc.*, 967 F.3d at 321.

Because the Commission's attempts to enforce Order 205-2021 after the petition date were an exercise of its police and regulatory power to secure compliance with the Commission's rules, the bankruptcy court correctly held that the Commission did not violate the automatic stay by seeking to enforce that order.

## IV.    Conclusion

For the foregoing reasons, this Court will affirm the bankruptcy court's denial of Black Diamond's amended motion to enforce an automatic stay and request for sanctions and motion for reconsideration.

DATED this 31st day of December, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record